**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br>P.O. Box 14596<br>Washington, DC 20044,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br>245 Murray Lane SW, Mail Stop 0485<br>Washington, DC 20528-0485,<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br>5900 Capital Gateway Dr., Mail Stop 2120<br>Camp Springs, MD 20588-0009<br><br>Defendants. | Case No. |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1. On July 16, 2026, President Trump delivered an address to the nation claiming his administration had identified approximately 278,000 non-citizens registered to vote in federal elections and ordered the United States Department of Homeland Security ("DHS") to direct states to remove these ineligible voters "immediately."[1]

2. DHS simultaneously released a fact sheet asserting that over 250,000 non-citizens are illegally registered to vote in California, Pennsylvania, New Jersey, and Nevada.[2]

---

[1] The White House, *President Trump Delivers an Address to the Nation*, at 34:33–35:23; 39:36–39:47 (YouTube, July 16, 2026), https://tinyurl.com/yckcuf63.

[2] Press Release, U.S. Dep't of Homeland Sec., *Preventing Alien Voting* (July 16, 2026), https://tinyurl.com/4cprz42f (filed under "Noncitizens on State Voter Rolls").

3. The same day, Secretary of Homeland Security Markwayne Mullin wrote to those states' chief election officials to "warn them about tens of thousands of non-citizens who are illegally on the states' voter rolls."[3] The letters provided state-by-state figures totaling roughly 256,000, describing the analysis as a "preliminary review," and demanded that the state election officials confirm their intent to cooperate with DHS within 14 days.[4]

4. The next day, Secretary Mullin threatened officials in non-complying states with fines and criminal penalties.[5]

5. Weeks later, the American people still do not know how these figures were produced: DHS has declined to disclose its methodology despite election officials in at least three of the four states demanding it.[6] Without a transparent methodology, independent experts assert the administration's figures cannot be evaluated and should not be credited.[7]

6. On August 14, 2026, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submitted Freedom of Information Act ("FOIA") requests to DHS and its component the United States Citizenship and Immigration Services ("USCIS"). CREW also requested expedited processing and a fee waiver in each request. *See id*.

---

[3] Press Release, U.S. Dep't of Homeland Sec., *DHS Secretary Markwayne Mullin Sends Letters to Secretaries of State Warning About Non-Citizens on Voter Rolls* (July 17, 2026), https://perma.cc/YZX8-L9KL.

[4] *Id.*; Secretary Markwayne Mullin (@SecMullinDHS), X (July 17, 2026), https://tinyurl.com/yc4eysfr.

[5] U.S. Dep't of Homeland Sec., *Secretary Mullin Delivers Remarks on President Trump's Update on Election Integrity Efforts*, at 15:29–16:19 (YouTube, July 17, 2026), https://tinyurl.com/57v8hkzn.

[6] Jane C. Timm, *States push DHS to explain its noncitizen voter claims*, NBC News (July 31, 2026), https://tinyurl.com/yc57c9bm.

[7] Jude Joffe-Block & Miles Parks, *Trump's Claims of 250,000 Non-U.S. Citizens on Voter Rolls Leave Some States Baffled*, NPR (July 31, 2026), https://tinyurl.com/2wtdb36w.

7. CREW's requests seek records concerning the methodology and data sources used to support the Trump Administration's claims that hundreds of thousands of non-citizens are illegally registered to vote across four states. *See* Exhibits A, B.

8. CREW also requested expedited processing and a fee waiver in each request. *See id*.

9. To date, Defendants have failed to make a timely determination on CREW's FOIA requests.

10. CREW now brings this action under FOIA, 5 U.S.C. § 552, seeking declaratory and injunctive relief requiring DHS and USCIS, to process CREW's FOIA requests on an expedited basis, preserve all records potentially responsive to CREW's requests, and promptly disclose all non-exempt responsive records.

**JURISDICTION AND VENUE**

11. This Court has subject-matter jurisdiction under 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.

12. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(b).

**PARTIES**

13. Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies and to ensuring the integrity of government officials and agencies. CREW seeks to empower citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions. To advance its mission,

CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW uses government records made available to it under FOIA and widely disseminates those records to the public.

14. DHS is an agency within the meaning of 5 U.S.C. § 552(f). DHS has possession, custody, and control of the requested records and is responsible for fulfilling Plaintiff's FOIA request at issue.

15. USCIS is an agency within the meaning of 5 U.S.C. § 552(f). USCIS has possession, custody, and control of the requested records and is responsible for fulfilling Plaintiff's FOIA request at issue.

**LEGAL FRAMEWORK**

16. FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

17. Upon receipt of a FOIA request, an agency must make a determination whether to comply with it and notify the requester of that determination within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

18. An agency's failure to make this determination within 20 days is subject to judicial review without exhausting administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

19. Moreover, FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

20. After a FOIA request is received by an agency, it must "make reasonable efforts to search for the records." 5 U.S.C. § 552(a)(3)(C). If the agency identifies any responsive records, the agency must make them "promptly available." *Id.*

21. In "unusual circumstances" an agency may extend the time to respond to a request by no more than 10 working days, provided that the agency gives the requester written notice setting forth the unusual circumstances and the date on which the agency expects to make a determination. 5 U.S.C. § 552(a)(6)(B)(i)-(iii). FOIA defines "unusual circumstances" as including the need to search for and collect responsive records from offices other than the office processing the request; the need to search for, collect, and examine a "voluminous amount of separate and distinct records;" and the need to consult with another agency. *Id.* § 552(a)(6)(B)(iii)(I)-(III).

22. Further, agencies shall grant requesters requests for expedited processing of their FOIA requests when they demonstrate "compelling need," as well as "other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). "Compelling need" requires the requester to show that they are "a person primarily engaged in disseminating information" with an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II).

23. DHS's FOIA regulations require expedited processing when a DHS component determines that a request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(ii) and (iv).

24. A determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after

the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I). DHS regulations mirror this requirement. *See* 6 C.F.R. § 5.5(e)(4).

25. Agency action to deny a request for expedited processing, and failure by an agency to respond in a timely manner to such a request, is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

**FACTUAL ALLEGATIONS**

26. On July 16, 2026, DHS "blindsided" California, Pennsylvania, Nevada, and New Jersey with letters alleging that tens of thousands of non-citizens were registered to vote in each state.[8]

27. The same day, the President publicly ordered DHS to direct states to remove ineligible voters "immediately."[9]

28. The next day, Secretary Mullin threatened officials in non-complying states with fines and criminal penalties.[10]

29. Three deadlines loomed: the two-week deadline in DHS's letters,[11] the August 5 beginning of the "quiet period" under the National Voter Registration Act ("NVRA") (after which systematic removals from the rolls are prohibited),[12] and the November 3 election itself.

30. But the states had no way to verify DHS's claims—the agency failed to provide any underlying data or methodology, in the letters or otherwise.[13]

---

[8] Secretary Markwayne Mullin (@SecMullinDHS), *supra* note 4; Gabe Cohen, Priscilla Alvarez, & Tierney Sneed, *Markwayne Mullin Uses Homeland Security to Further Trump's Voter Fraud Crusade*, CNN (Aug. 12, 2026), https://tinyurl.com/4w2pjcmn.
[9] The White House, *supra* note 1 at 39:36–39:47.
[10] U.S. Dep't of Homeland Sec., *supra* note 5 at 15:29–16:19.
[11] Secretary Markwayne Mullin (@SecMullinDHS), *supra* note 4.
[12] 52 U.S.C. § 20507(c)(2)(A).
[13] Joffe-Block & Parks, *supra* note 7.

31. It is not clear how DHS could have compiled these statistics through legal means. DOJ sued these and more than twenty other states to obtain voter files containing partial Social Security and driver's license numbers and largely lost,[14] but DHS's letters indicate it matched registrants on precisely those fields.[15]

32. Furthermore, on June 22, 2026, a federal court vacated modifications DHS made to its Systematic Alien Verification for Entitlements ("SAVE") system in 2025 to enable mass "voter verification" checks, after finding the modified system unlawful and its results prone to errors that could disenfranchise eligible voters. *League of Women Voters v. DHS*, 835 F. Supp. 3d 79, 95-96 (D.D.C. 2026). DHS was prohibited from using the modified SAVE system until the Supreme Court stayed the order on September 25, 2026. *DHS v. League of Women Voters*, No. 26A308, 2026 WL 2879700 (U.S. Sept. 25, 2026).

33. Thus, it remains unknown how DHS could have conducted mass searches of sensitive voter information without illegally accessing these resources.

34. Without evidence that the data is inaccurate, the federal government's demands may pressure states to violate the NVRA and in the process, disenfranchise eligible voters, given President Trump's demand that states remove flagged voters "immediately,"[16] and Secretary Mullins' threats of fines and criminal sanctions for noncompliance.

35. States are grappling with these problems now, under immense time pressure, and records released after the election will come too late to be of use.

---

[14] Nick Corasaniti, *Federal Appeals Panel Rejects Trump's Effort to Gather Voting Data From States*, N.Y. Times (June 24, 2026), https://tinyurl.com/bd8kf5ae.
[15] Secretary Markwayne Mullin (@SecMullinDHS), *supra* note 4.
[16] The White House, *supra* note 1 at 39:36–39:47.

36. Additionally, state officials worry that similar unverified figures released closer to the election could be used as a pretext for federal interference in the counting of ballots.[17]

37. Delay in disclosure would compromise the public's significant recognized interests in preventing the disenfranchisement of eligible voters and safeguarding the integrity of elections. *See Protect Democracy Project, Inc. v. DOJ*, 498 F. Supp. 3d 132, 140 (D.D.C. 2020) (delay would compromise significant recognized interests in voting rights and election integrity); *CREW v. DOJ*, 826 F. Supp. 3d 73, 87–89 (D.D.C. 2026) (delay would compromise significant recognized interests in voting rights and voter privacy).

38. These claims stoke fears about voter fraud, undermine public confidence in election administration, and may ultimately reduce voter participation in the upcoming election. The public needs these records now in order to evaluate the truth of DHS's claims, respond appropriately, and restore confidence in the election process ahead of the midterm elections.

39. Delay would also compromise the public's interest in ensuring that the government acts within the confines of the law. *See Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299–300 (D.D.C. 2017) (delay would compromise significant recognized interest because it would preclude public "from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of a high-profile government action" (citation modified)); *CREW v. U.S. DOGE Serv.*, 769 F. Supp. 3d 8, 27 (D.D.C. 2025) (similar). The requested records bear on a number of questions about the legality of DHS's actions.

40. CREW's FOIA requests seeking the methodology behind DHS's figures would likely contribute significantly to the public's ability to evaluate whether the federal government's

[17] Joffe-Block & Parks, *supra* note 7.

central factual claim about the integrity of the 2026 elections is credible, and whether eligible voters are at risk of being removed from the rolls on the basis of unverified matches.

**CREW's August 14, 2026 FOIA Requests to DHS and USCIS**

41. On August 14, 2026, CREW submitted identical FOIA requests to DHS and USCIS. *See* Exhibits A, B.

42. In each request, CREW sought the following records from March 1, 2026 to the date the request is processed:

1. Records sufficient to show the methodology, criteria, and analytical process used to generate the following the numerical claims made publicly by DHS and the President on or about July 16 and 17, 2026 regarding non-citizens registered to vote, including:

    a. The claim that over 250,000 non-citizens are illegally registered to vote in California, Pennsylvania, New Jersey, and Nevada;
    b. The state-specific figures of 190,832 (California), 35,152 (New Jersey), 15,903 (Nevada), and 14,576 (Pennsylvania);
    c. The claim that approximately 278,000 non-citizens are registered to vote in federal elections;
    d. The figure of 118,003 registrants across the four states whose names, dates of birth, addresses, and Social Security numbers were said to match non-citizens in DHS records; and
    e. The claims that the SAVE system enabled participating states to identify over 400,000 deceased registrants and over 28,000 non-citizen registrants.

    This request includes, but is not limited to, records sufficient to show: the data sources used to generate these figures; the matching criteria, thresholds, and confidence levels; any code, scripts, queries, models, or algorithms used; any documentation distinguishing "potential," "possible," and confirmed matches; and any documented or estimated error, false-positive, or false-negative rates.

2. All records reflecting internal assessments of the accuracy, reliability, or limitations of these numerical claims or of the underlying matching process, including quality assurance, validation, testing, sampling, and audit records, and any concerns, objections, caveats, or dissenting views raised by agency personnel.

3. All communications concerning the preparation, clearance, and approval of the DHS fact sheet titled "Preventing Alien Voting" or the DHS press release of July 17, 2026.

Exhibits A, B.

43. In each request, CREW sought a fee waiver in accordance with 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k). *Id.*

44. In each request, CREW also sought expedited processing in accordance with 5 U.S.C. § 552(a)(6)(E)(v)(II), 6 C.F.R. § 5.5(e), and 28 C.F.R. § 16.5(e)(1) on the grounds that: (1) the government's unexplained non-citizen voter registration figures present a matter of acute current exigency; (2) delay in disclosure would compromise the public's significant recognized interests in preventing the disenfranchisement of eligible voters and safeguarding the integrity of elections; and, (3) the requested records concern federal government activity. *See* Exhibits A, B.

45. On August 25, 2026, USCIS acknowledged CREW's request and assigned it the control number COW2026005878. Exhibit C, at 1. The email granted a fee waiver, denied expedited processing, and invoked the ten-business day extension pursuant to 5 U.S.C. 552(a)(6)(B) due to "the scope and nature" of the request. *Id.* at 1-2. No timeline for records production was provided, and no records have been produced. *Id.*

46. To date, CREW has received no further communication from USCIS regarding the request.

47. On September 23, 2026, DHS sent CREW an email acknowledging the request, and assigning it reference number 2026-HQFO-03605. Exhibit D. The email stated that DHS "determined that this is a matter under the purview of the U.S. Citizenship & Immigration Services, another DHS component;" and that "therefore, [DHS is] transferring your request to the FOIA Officer for processing and direct response to you." *Id.*

48. DHS did not formally "refer" the request under its regulations. *See* 5 C.F.R. § 5.4(d)(3).

49. To date, CREW has received no further communication from DHS regarding the request.

**CREW'S CLAIMS FOR RELIEF**

**COUNT I**
**Violation of FOIA – Failure to Grant Expedited Processing**
**(5 U.S.C. § 552)**

50. CREW re-alleges and incorporates by reference all preceding paragraphs.

51. In its August 14, 2026 FOIA requests, CREW properly sought records within the possession, custody, and control of Defendants.

52. CREW further requested expedited processing of its FOIA requests.

53. CREW properly sought expedition from Defendants because of the urgency to inform the public about an actual or alleged federal government activity.

54. CREW further properly sought expedition because the subject of the request is a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

55. CREW is primarily engaged in disseminating information.

56. Defendant USCIS wrongfully denied CREW's request for expedited processing and improperly failed to process CREW's request on an expedited basis.

57. Defendant DHS did not make a determination on CREW's FOIA requests, including the request for expedited processing.

58. An agency's denial of a request for expedited processing or an agency's failure to respond within 10 calendar days to a request for expedited processing is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

59. By denying or failing to respond to CREW's request for expedition and failing to expeditiously release all requested non-exempt records to CREW, Defendants are in violation of FOIA.

60. Accordingly, CREW is entitled to injunctive and declaratory relief requiring Defendants to process and disclose all non-exempt requested records to CREW on an expedited basis.

**COUNT II**
**Violation of FOIA – Wrongful Withholding of Agency Records**
**(5 U.S.C. § 552)**

61. CREW re-alleges and incorporates by reference all preceding paragraphs.

62. In its August 14, 2026 FOIA requests, CREW properly sought records within the possession, custody, and control of Defendants.

63. Defendant DHS wrongfully withheld agency records requested by CREW by failing to make determinations on CREW's requests within the statutorily prescribed time period of 20 business days, as required by 5 U.S.C. § 552(a)(6)(A), and by continuing to withhold documents that are non-exempt and responsive to CREW's FOIA requests.

64. Defendant USCIS wrongfully withheld agency records requested by CREW by failing, after notifying Plaintiff that "unusual circumstances" necessitated a 10-day extension, to make determinations on CREW's request within the statutorily prescribed time period of 30 business days, as required by 5 U.S.C. § 552(a)(6)(A-B), and by continuing to withhold documents that are non-exempt and responsive to CREW's FOIA request.

65. CREW has constructively exhausted its administrative remedies.

66. Accordingly, CREW is entitled to injunctive and declaratory relief requiring Defendants to immediately process and disclose all non-exempt requested records to Plaintiff.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendants to grant expedited processing of CREW's FOIA requests, and immediately and fully process those request and disclose all non-exempt documents to CREW;

(2) Declare CREW is entitled to the expedited processing and disclosure of the non-exempt records it has requested under FOIA;

(3) Order Defendants to preserve all records, in whatever form they exist, potentially responsive to all of CREW's pending FOIA requests prior to and during the processing of these requests;

(4) Order Defendant DHS to grant CREW's requests for fee waivers;

(5) Provide for expeditious proceedings in this action;

(6) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld and ensure compliance with this Court's orders;

(7) Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(8) Grant such other relief as the Court may deem just and proper.

Date: September 29, 2026

Respectfully submitted,

/s/*Lauren C. Bingham*___________
Lauren C. Bingham (D.C. Bar No. 90043462)
Samantha M. Creighton (D.C. Bar 90043959)*
Kayvan Farchadi (D.C. Bar No. 1672753)
John B. Hill (D.C. Bar No. 90044825)
Nikhel S. Sus (D.C. Bar No. 1017937)
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
lbingham@citizensforethics.org
screighton@citizensforethics.org
kfarchadi@citizensforethics.org
jhill@citizensforethics.org
nsus@citizensforethics.org

**pro hac vice motion forthcoming*