**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br>*Plaintiff*,<br>v.<br>U.S. DEPARTMENT OF HOMELAND SECURITY and U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br>*Defendants*. | Civil Action No. 26-cv-3393 (BAH) |

**MOTION TO CLARIFY AND ENFORCE**

Plaintiffs Citizens for Responsibility and Ethics in Washington ("CREW") hereby requests that this Court clarify and enforce its Minute Order of November 17, 2026, requiring Defendant DHS "to continue processing and producing responsive records at the established rate," and to do so "until *all* records responsive to plaintiff's request are processed," because after conferral, the parties do not agree on what that order imposes upon DHS. Plaintiff is mindful that this Court has instructed the parties that questions concerning "the adequacy of defendants' search and withholdings" are appropriately resolved on summary judgment, but respectfully seeks this Court's clarification and enforcement now because this issue relates to DHS's past and present compliance with this Court's existing orders, rather than the adequacy of DHS's entire search and withholdings.[1] Counsel for Defendants represented to undersigned counsel that they oppose this

[1] Plaintiff understands this Court's caution that questions concerning the "adequacy of defendants' search and withholdings" are appropriately resolved on summary judgment to apply to its concerns about whether enough offices have been searched, for example. *See* Joint Status Report at 5, ECF No. 28 at 5. As that caution suggests, an inquiry into the adequacy of a search asks whether an agency failed to search a source where responsive records are likely to be found. Here, Plaintiff

motion. Plaintiff requests that Defendants be required to respond to this motion by November 25, 2026, to expedite resolution of this matter.

**BACKGROUND**

Plaintiff includes only the background relevant to this motion. On October 16, DHS reported that it had run "a second search employing broader search terms," which "was performed to ensure DHS's search captured the scope of Plaintiff's FOIA request" and located 1,514 documents "totaling 32,395 pages of potentially responsive records." ECF No. 17 at 2. DHS then ran Plaintiff's proposed queries "against DHS's preliminary results"; "[t]he greatest reduction resulted in some 153 documents and 14,211 pages," and DHS proposed to "begin processing" with that query. *Id*. at 2–3.

On October 23, 2026, Defendants reported to this Court that they had processed approximately 13,000 pages of documents. *See* ECF No. 18 at 1. As Defendants have since acknowledged, that report and the parties' discussions leading to it concerned the ~32,000-page set of potentially responsive records. *See* ECF No. 28 at 2. And in accordance with the parties' agreement, the Court ordered Defendants to process "no fewer than 1,000 pages of potentially responsive records per week." Min. Order of Oct. 23, 2026.

A week later, on October 30, DHS described the 14,211 pages as "a subset" that "reduced the universe of records from about 32,000," and stated that it "understood that narrowing to [be] agreeable with Plaintiff." ECF No. 21 at 3. DHS stated that the "number of pages processed by DHS from its search of the DAS for Election Integrity is approximately 13,000," and that all 13,000 were nonresponsive. *Id*. This did not show any progress in processing since the previous

asks the Court to enforce its order that DHS process records it has already located and identified as potentially responsive.

joint status report ("JSR"), so the next day, this Court ordered a JSR to be filed that would advise the Court "of the number of pages processed by DHS from its search of the DAS for Election Integrity since October 23, 2026." Min. Order of Oct. 31, 2026. That JSR, filed November 4, 2026, stated that "Defendant DHS respectfully advises this Court that since October 23 it has *reviewed* 1,211 pages and made an initial determination on those pages' responsiveness. Those pages are part of the subset of 14,211 pages of records obtained using one of Plaintiff's proposed search queries. DHS will process records in accordance with the parties' agreed schedule." ECF No. 22 at 2 (emphasis added).

As Plaintiff has stated multiple times, it never proposed or agreed that one set of its proposed search terms would (on its own) capture the universe of documents responsive to Plaintiff's entire request, and it highlighted this issue for the Court in the JSR of November 4, 2026, ECF No. 22 at 4.

The issue of the scope of the correct universe of documents presented itself for resolution by the Court in the parties' JSR of November 13, 2026. *See* ECF No. 28. In that JSR, Defendants stated that "DHS has been processing a set of 14,211 potentially responsive pages," and that "Defendants had previously reported that DHS was processing a 32,000-page set of records obtained in DHS's preliminary search of the DAS for Election Integrity" but that search "was rejected" "as having been overly broad" and that it "was included in the Parties' discussions and Joint Status Report of October 23, 2026, based on a miscommunication between DHS and DOJ counsel." *Id*. at 1-2. Plaintiff maintained, as relevant here, that DHS's decision to process only the 14,211 pages represented an attempt to wrongfully limit the universe of documents to 14,211 pages rather than ~32,000. *Id*. at 3-6.

On November 17, after considering the parties' JSR, this Court issued the following minute order:

> MINUTE ORDER (paperless), upon consideration of parties' [28] Joint Status Report ("JSR"), in which plaintiff states that defendants are attempting unilaterally to narrow the scope of potentially responsive records from the Office of the Deputy Assistant Secretary for Election Integrity to a 14,211-page subset of records obtained using one of five priority search proposals identified by plaintiff, *see* [22] JSR (Nov. 4, 2026) at 2-4, DIRECTING defendants to continue processing and producing responsive records at the established rate, *see* Min. Order (Oct. 23, 2026), until *all* records responsive to plaintiff's request are processed; DENYING plaintiff's requests for a status conference and *Vaughn* indices, on a rolling basis for each production, as premature and likely resulting in delays in production; and FURTHER DIRECTING parties to file, by November 30, 2026, a joint status report advising the Court of the status of this matter and proposing a schedule to govern further proceedings. Despite plaintiff's stated concerns about the adequacy of defendants' search and withholdings, those issues are appropriate for resolution via cross-motions for summary judgment not through status conferences in the midst of defendants' processing and production efforts. *See Evans v. U.S. Off. of Pers. Mgmt.*, 276 F. Supp. 2d 34, 37 (D.D.C. 2003) ("Summary judgment is the preferred method of resolving cases brought under FOIA."). Similarly, *Vaughn* indices are typically provided at the end of productions to facilitate dispositive briefing, *see Leopold v. Sullivan*, 823 F. Supp. 3d 59, 69 n.2 (D.D.C. 2026), and plaintiff has not supported its request with case law explaining why defendants should be distracted from their processing efforts to complete the time- and resource-intensive task of drafting a *Vaughn* index at this stage of the litigation.

After the Court issued that order, counsel for Plaintiff reached out to government counsel, explaining that Plaintiff "interpret[s] this order to mean that DHS is required to continue to process the entire 32,00[0] page universe of documents that were discovered in DHS's initial search at a rate of 1,000 pages per week, and make rolling weekly productions" and asking defense counsel to confirm whether that was their understanding as well. *See* Exhibit 1 (email between counsel), attached hereto.

In response, government counsel replied: "We do not agree with your interpretation. We understand this Order to direct DHS to continue processing responsive records it identified as a result of its search. As explained in DHS's most recent declaration and Defendant's position statement in the previous JSR, DHS determined that its preliminary search of DAS Honey's emails (resulting in a universe of about 32,000 potentially responsive pages) was overbroad. It therefore

redid the search and is relying on those results. DHS will continue processing the 14,211-page set of potentially responsive pages obtained from the more targeted search until all nonexempt, responsive records are disclosed. Our understanding of the Court's order is informed by the Court's instruction that any dispute concerning the adequacy of DHS's search is properly resolved at summary judgment." *See* Exhibit 1.

## STANDARD

"[T]he general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *United States v. Philip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (citation modified). Although a motion for clarification may not open the door to "re-litigat[ing] a matter that the court has considered and decided," *Sai v. Transp. Sec. Admin.*, No. 14-cv-0403, 2015 WL 13889866, at *3 (D.D.C. Aug. 19, 2015), courts in this circuit have encouraged parties to request clarification when they are uncertain about the scope of a ruling or its application "in a concrete context or particular factual situation." *Philip Morris USA Inc.*, 793 F. Supp. 2d at 168–69.

"[A]ll orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). "In determining compliance with an order, the Court is guided not only by the text of that order but also by its related opinions." *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, No. CV 18-508, 2026 WL 1557609, at *5 (D.D.C. June 2, 2026).

## ARGUMENT

At the inception of this case, Defendants sought to avoid briefing the preliminary injunction by agreeing to an order to process 1,000 pages per week and make rolling productions. *See* ECF No. 18 at 2. Defendants reached that agreement on October 23, three days before their opposition to the preliminary injunction motion was due, *see* Min. Order of Oct. 19, 2026, and the Court later

denied Plaintiff's motion as moot because it "seeks the same relief agreed to by the parties and memorialized in an order from the Court." Min. Order of Oct. 31, 2026. Despite voluntarily agreeing to do so, and the Court memorializing that agreement, Defendants appear to be engaged in a pattern of behavior to evade their agreement and the Court's order, by intentionally obfuscating exactly how many pages Defendants have processed, raising questions about their compliance. Plaintiffs respectfully request that the Court promptly clarify and enforce its order, and take any other action it deems appropriate.

## I. Defendants are obfuscating how many pages they have processed to evade scrutiny of their noncompliance, and this Court should enforce its order.

On October 23, 2026, Defendants reported that they had processed approximately 13,000 pages of documents. ECF No. 18 at 1. A week later, on October 30, DHS stated that the "number of pages processed by DHS from its search of the DAS for Election Integrity is approximately 13,000." ECF No. 21 at 3. This did not show any progress in processing, so this Court ordered a JSR to advise the Court "of the number of pages processed by DHS from its search of the DAS for Election Integrity since October 23, 2026." Min. Order of Oct. 31, 2026. That JSR, filed November 4, 2026, stated that "Defendant DHS respectfully advises this Court that since October 23 it has *reviewed* 1,211 pages and made an initial determination on those pages' responsiveness. Those pages are part of the subset of 14,211 pages of records obtained using one of Plaintiff's proposed search queries." ECF No. 22 at 2 (emphasis added).

In light of recent developments, this statement raises questions. First, this statement refers to documents having been "reviewed," not "processed." DHS's most recent declaration explains that review and processing are not the same: "review refers to the preliminary assessment conducted by the FOIA processor. Records are not deemed processed until all layers of review are completed. It is not uncommon for determinations (e.g. responsiveness, selection of exemption(s),

segregability) made during the preliminary review to be changed as the records advance through the layers of review. When processing is complete, DHS releases the responsive records, if any, to the requester along with a release letter detailing the pages processed and the exemptions applied." Decl. of Catrina M. Pavlik-Keenan ("DHS Decl.") ¶ 8, ECF No. 28-1. Considering this explanation about DHS's understanding of the meanings of the terms "review" and "process," it is unclear whether DHS has complied with the Court's order to *process* 1,000 pages per week.

Second, even assuming this choice of verbiage was unintentional, Defendants should be *finished* processing the subset of 14,211 pages by now. They had processed about 13,00 pages as of October 23, 2026, and therefore would need (at most) two weeks to finish processing the remaining approximately 1,200 pages from this subset of documents, or until November 6, 2026. Indeed, in the November 4 JSR (where the Court ordered DHS to report on its progress since October 23), DHS stated that "since October 23 it has reviewed 1,211 pages." ECF No. 22 at 2. Basic addition shows: 13,000 pages + 1,211 pages = 14,211 pages—the exact number of pages in this subset. Accordingly, it is unclear what DHS has been doing since at least November 4, 2026, when it purportedly finished "reviewing" the subset of 14,211 pages. Until last week, Plaintiff believed DHS had simply moved on to processing the remaining approximately 19,000 pages from its initial search, which yielded about 32,000 pages of potentially responsive documents.[2] But in the most recent JSR, DHS states that with respect to those 14,211 pages, "processing is nearly finished" and yet also requests that that schedule should be "modified" to give DHS even more time to complete its processing of that subset of documents, requesting until Monday, November

---

[2] It is notable that while the November 13, 2026, JSR states that DHS "rejected" the search that turned up 32,000 pages as "overbroad," that assertion appears nowhere in the DHS declaration. Instead, the declaration simply states that "[t]he *corrected* preliminary search located 32,395 potentially responsive pages," without noting that at any point that DHS later determined that search was overbroad. *See* DHS Decl. ¶ 5, ECF No. 28-1 (emphasis added).

30, 2026 to do so. ECF No. 28 at 2. If DHS finishes processing these records on November 30, it will have taken more than five weeks to process 1,211 pages, meaning a rate of roughly 220 pages per week.

Given DHS's representations, it stands to reason that DHS has not actually processed (and perhaps has merely "reviewed") the subset of 14,211 pages, and therefore is or has been in violation of this Court's order to process documents at a rate of 1,000 pages per week. This Court should therefore enforce its order by: requiring Defendants to explain their processing in each week since October 23 to date; the number of those pages found to be responsive; and the date on which the processing of the 14,211-page subset was or will be complete.

## II. This Court should clarify its November 17, 2026, minute order because Defendants' interpretation is unreasonable and harms Plaintiff.

The harm from DHS's potential non-compliance with this Court's order to process documents at the rate of 1,000 pages per week is compounded by DHS's unreasonable interpretation of this Court's most recent minute order, which "DIRECT[ED] defendants to continue processing and producing responsive records at the established rate, *see* Min. Order (Oct. 23, 2026), until *all* records responsive to plaintiff's request are processed."

DHS's interpretation cannot be squared with the order's text. As stated above, Defendants' position that was communicated to Plaintiff is that DHS will continue processing the 14,211-page set of potentially responsive pages until all nonexempt, responsive records are disclosed, but not process more pages than that. But "Defendants read the Court's Order narrowly and divorced from the broader context in which the [order] arose." *Garcia Ramirez*, 2026 WL 1557609, at *7. Having recounted Plaintiff's objection that Defendants were "unilaterally" narrowing the records to "a 14,211-page subset," the Court directed processing until "all" responsive records are processed. A direction to process "all" records does not stop at a "subset." The November 17, 2026 order also

incorporates the October 23 order, which sets the processing rate in terms of pages of "potentially responsive records," which is how DHS described the larger set of ~32,000 pages. Min. Order of Oct. 23, 2026; *see* ECF No. 17 at 2

Nor can it be squared with the agreement the October 23 order memorialized. Defendants have conceded that the ~32,000-page set "was included in the Parties' discussions and Joint Status Report of October 23, 2026." ECF No. 28 at 2. That is the report after which the Court entered the weekly rate and, a week later, denied Plaintiff's preliminary injunction motion as moot. Min. Orders of Oct. 23 and 31, 2026. A "miscommunication between DHS and DOJ counsel," ECF No. 28 at 1-2, does not change what the parties agreed to or what the Court ordered. If Defendants believed the order rested on a mistake, the remedy was to ask the Court to modify it, and the Court did not do so.

Nor is DHS's account of the 32,395 pages consistent across its own representations in this case. First, DHS told the Court that the search producing those pages "was performed to ensure DHS's search captured the scope of Plaintiff's FOIA request" and "did not decrease" after "deduplication." ECF No. 17 at 2. Two weeks later, it defended processing only the subset on the ground that it "understood that narrowing to [be] agreeable with Plaintiff." ECF No. 21 at 3. A month later, Defendants suddenly announced that the search which had formed the basis of the parties' negotiations and agreements up to that point had been "rejected" as "overly broad." ECF No. 28 at 1–2, resulting in "unilateral narrowing of the request" running "counter to the agency's obligation to construe the request reasonably and liberally." *RNC v. Dep't of State*, 235 F. Supp. 3d 235, 240 (D.D.C. 2016) (Howell, J.); *see also Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) (agencies must read FOIA requests "as drafted, not as either agency officials . . . might wish it was drafted") (citation modified).

DHS's interpretation harms Plaintiff, who has secured an agreement and order for DHS to process documents at an expedited rate in light of the exigencies that motivated it to seek preliminary injunctive relief. Plaintiff's position is that order requires them to continue to process "*all* records responsive to plaintiff's request"—meaning (as DHS's declarant put it): the "32,395 potentially responsive pages" located by the "[t]he corrected preliminary search," DHS Decl. ¶ 5. Because it appears that DHS is already out of compliance, DHS will violate *another* of the Court's orders if they finish processing the 14,211 pages and do not process the remaining roughly 19,000 pages. This would concretely harm Plaintiff because it would cause a delay in receiving the records that DHS has agreed (and this Court has ordered) to provide to it. The existing shortfall of approximately 2,789 pages grows each week Defendants fail to comply with this Courts orders.

Finally, even if DHS is correct in their interpretation of this Court's minute order being limited to the subset of 14,211 pages (which they should be *finished* processing, as explained above), both parties will benefit from the Court clarifying its order so that the parties can accurately assess the DHS's remaining processing obligations and the next steps in this litigation.

## CONCLUSION

Plaintiff moves for clarification and enforcement now to have this issue resolved expeditiously, without waiting for the date of the next JSR, to avert the harm of having Defendants not process any records beyond the 14,211 pages until that time. Plaintiff respectfully requests that this Court clarify that DHS must process all "32,395 potentially responsive pages" located by the "[t]he corrected preliminary search," DHS Decl. ¶ 5, at the established rate of 1,000 pages per month; and enforce its order by directing that DHS explain their processing in each week since October 23 to date, including the number of those pages found to be responsive and the date on which the processing of the 14,211-page subset was or will be complete.

Dated: November 20, 2026

Respectfully submitted,

*/s/ Lauren C. Bingham*
Lauren C. Bingham (D.C. Bar No. 90043462)
Samantha M. Creighton (D.C. Bar No. 90043959)*
Kayvan Farchadi (D.C. Bar No. 1672753)
John B. Hill (D.C. Bar No. 90044825)
Nikhel S. Sus (D.C. Bar No. 1017937)
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596 Washington, DC 20044
(202) 408-5565
lbingham@citizensforethics.org
screighton@citizensforethics.org
kfarchadi@citizensforethics.org
jhill@citizensforethics.org
nsus@citizensforethics.org

**admitted pro hac vice*

*Attorneys for Plaintiff*